776 So.2d 99 (2000)
Ex parte Youngjoo FLYNN, R.N.
Re Jean Sellers
v.
Y. Flynn, R.N., et al.
1981999.
Supreme Court of Alabama.
June 30, 2000.
Michael K. Wright, Sybil V. Abbott, and Geoffrey S. Bald of Starnes & Atchison, L.L.P., Birmingham, for petitioner.
Julia T. Cochrun and Karen D. Farley of Pate, Lloyd, Fuston & Cochrun, L.L.P., Birmingham, for respondent.
PER CURIAM.
Youngjoo Flynn, a registered nurse employed by the University of Alabama at Birmingham ("UAB"), is a defendant in a tort action brought by Jean Sellers. That action is currently pending in the Jefferson Circuit Court. Sellers had been a patient at the University of Alabama Hospital ("the hospital"), a division of UAB. She alleged in her complaint that Flynn, a nurse at the hospital, had negligently allowed her to fall in her hospital room. Flynn moved for a summary judgment, on the ground that she was immune from suit under the doctrine of discretionary-function immunity. The trial judge denied the motion for summary judgment, holding that Flynn was not entitled to immunity. Flynn petitioned for a writ of mandamus directing the trial court to enter a summary judgment for her. We deny the writ.

Facts
The materials before us tend to show the following facts:
Sellers entered the hospital on July 29, 1995, for treatment following a myocardial infarction. Dr. Thomas Richardson was primarily responsible for her care. On July 31, Sellers was transferred from the cardiac-care unit to the cardiology floor. At the time of her transfer, Dr. Richardson made the following entry on a "physician's order sheet": "Activity: bedrest & bedside commode."
In July 1995, Flynn was a staff nurse at the hospital working 12-hour shifts from 7:00 p.m. to 7:00 a.m. on the cardiology floor. While Flynn was on duty, she was the primary person responsible for providing nursing care to Sellers. A nursing aide, Gloria Littlejohn, assisted Flynn in providing care to Sellers.
Dr. Richardson scheduled Sellers to undergo a cardiac catheterization; the procedure was set for 6:45 on the morning of August 2, 1995. His order scheduling the catheterization did not provide any additional or updated activity-level orders. *100 The night before the scheduled catheterization, Sellers had difficulty falling asleep. Pursuant to an order by Dr. Richardson, nurse Flynn gave Sellers 10 milligrams of Ambien, a sedative, at 1:30 a.m.
The material before us is conflicting as to the order in which they entered Sellers's room, but it appears that a few hours after Flynn gave Sellers the sedative Littlejohn entered Sellers's room once and Flynn entered the room twice, in efforts to awaken Sellers and prepare her for the catheterization. Flynn testified in a deposition that in her final visit to Sellers's room she informed Sellers that she needed to get up and get ready for the catheterization. Flynn testified that Sellers acknowledged her, got out of bed, and started toward the bathroom. Flynn testified that when she left the room, Sellers was moving toward the bathroom and did not appear to be having any problems.
Sellers and her sister, Betty Parris, however, contradict Flynn. Parris had stayed with Sellers in the hospital room the night before the catheterization was scheduled. Parris stated in an affidavit that on Flynn's final visit Flynn slammed the door and left before Sellers acknowledged Flynn or got out of bed. Sellers's testimony is consistent with her sister's testimony.
Sellers slipped and fell as she was attempting to leave the bathroom. The fall caused a nondisplaced fracture of the fibula in one leg.
In his deposition, Dr. Richardson was asked what his order "bedrest and bedside commode" meant. He testified:
"A. Bedrest is just that; keeping the patient mostly in bed. A bedside commode is also what it sounds like; the patient will use the bedside commode to go to the bathroom instead of actually getting up to go to the commode in the room.
". . . .
"Q. [By plaintiff's counsel] Okay. Who is responsible for making sure the patient stays in bed?
"A. The nursing staff, I would imagine.
". . . .
"Q. When you, as a physician, order activity levels to be restricted to bedrest with bedside commode, what are your expectations for the nurse to do to comply with that order?
"A. I would imagine that the nurse would instruct the patient what the orders were, instruct family in the room what the orders were; that this is what the doctor wanted for them to do.
"Q. Okay. What do you, as a treating physician, expect a nurse to do if a bedside commode is not available?
"A. Would you define what `not available' means?
"Q. They're unable to get one. Say, they're all used up right now.
"A. II guess I would leave it to the discretion of the nurses; what they should do in that instance.
". . . .
"A.... The reason I put [`bedrest and bedside commode' in the orders] was because she was moving from the intensive-care unit to the floor after a heart attack. And I wanted to increase her activity level slowly, but I did not want her moving around, going to the bathroom unsupervised. So, I wrote that in there."
(Richardson deposition at 12-23.)

Discussion
Flynn argues that she was entitled to a summary judgment on the basis that, as an agent of the State, she enjoys immunity from Sellers's claim. Given our recent decision in Ex parte Cranman, [Ms. 1971903, June 16, 2000] ___ So.2d ___ *101 (Ala.2000) (on application for rehearing), we must disagree.
In Cranman, this Court "reexamine[d] the doctrine of immunity of officers, agents, and employees of the State for torts committed in the course of their performance of their duties." ___ So.2d at ___. The Court thoroughly reviewed the theory and evolution of the doctrine of immunity as it has been applied to agents of the State, and then restated the rule of immunity applicable in cases such as this one:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
___ So.2d at ___. (Emphasis added.)
In Cranman, a University of Alabama student, Matthew Cranman, suffered from testicular cancer. He sought treatment at the University's student health center, but the doctors at the center did not diagnose the cancer. He later died; while the record did not indicate the cancer had caused his death, his father, as plaintiff, stated in his appellate brief that Matthew had died of cancer. See ___ So.2d at ___ n. 1. Cranman's father, as executor of his estate, sued, among others, physicians who had treated Cranman at the student health center. Those physicians were employed by the University of Alabama. The trial court held that they had immunity. On our review, we stated the rule for Stateagent's immunity that we have quoted above, and then we considered whether the physicians were entitled to immunity. The physicians argued that medical "decision-making inherently involves the utmost discretion." Cranman, ___ So.2d at ___. We concluded, however, that their "conduct..., in their treatment of Matthew Cranman, [did] not fit within any category of conduct recognized by the restated rule as immune." Cranman, ___ So.2d at ___. As a consequence, we held that they were not entitled to immunity.
This case is subject to a similar analysis. Flynn argues that she was exercising discretion in determining the most appropriate *102 method of implementing Dr. Richardson's orders of "bedrest and bedside commode." The plaintiff argues that Flynn was not called upon to exercise judgment in implementing Dr. Richardson's orders and that, in implementing them, Flynn was engaged in a ministerial task. Even assuming, arguendo, that Flynn was called upon to use her judgment in implementing Dr. Richardson's orders, we must nonetheless conclude that she is not entitled to immunity. We see no factor that would distinguish this case from Cranman in such a way as to require or allow the conclusion that Flynn is entitled to immunity under the rule announced in Cranman.
The writ of mandamus is denied.
WRIT DENIED.
HOOPER, C.J., and HOUSTON, COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.
MADDOX and SEE, JJ., disssent.
ENGLAND, J., recuses himself.
MADDOX, Justice (dissenting).
My views regarding this case are fully expressed in my special writing in Ex parte Cranman, [Ms. 1971903, June 16, 2000] ___ So.2d ___ (Ala.2000). I believe that nurse Flynn is immune from suit under the doctrine of discretionary-function immunity.
SEE, Justice (dissenting).
I dissent from the denial of the writ of mandamus, for the reasons stated in my dissent in Ex parte Cranman, [Ms. 1971903, June 16, 2000] ___ So.2d ___, ___ (Ala.1999) (substituted opinion on application for rehearing). I would apply to the facts of this case the following balancing test (the test quoted here is the statement of the immunity rule provided in the withdrawn Cranman opinion of November 24, 1999):
"`Except where the Constitution or laws of the United States or the Constitution, laws, regulations, or rules of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or where the governmental agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law, a governmental agent is immune from civil liability where the conduct made the basis of the claim against the agent is based upon the agent's formulation of plans, policies, or designs, or where the agent otherwise makes decisions such as those made in the context of the following activities:
"`. . . .
"`(6) all other instances where acts or decisions, including those concerning the safety, health, well-being, fitness, competence, development, or confinement of persons, cannot be challenged without imposing a burden arising from interference with a coequal branch of government that exceeds the benefit of the challenging party's right to a judicial remedy.'"
Cranman, ___ So.2d at ___ (See, J., dissenting and quoting from the withdrawn opinion). Based on the application of that balancing test, I would determine whether to issue the writ directing the trial court to enter a summary judgment in favor of the defendant, Youngjoo Flynn, R.N., on the ground that she is entitled to discretionary-function, or State-agent, immunity.
Nurse Flynn was engaged in a discretionary function when, as an employee of the University of Alabama at Birmingham Hospital, she made her decisions regarding the implementation of Dr. Richardson's order relating to the care of the plaintiff Jean Sellers. See Smith v. Arnold, 564 So.2d 873 (Ala.1990); Smith v. King, 615 So.2d 69 (Ala.1993). In this case, that determination appears dispositive. See generally Ex parte Cranman, ___ So.2d at ___ (See, J., dissenting). However, as I stated in my dissent from the substituted *103 Cranman opinion issued on application for rehearing, the discretionary/ministerial determination is not always dispositive of the issue of State-agent immunity. In balancing the policies of the right to a remedy (Art. I, § 13, Ala. Const. of 1901) and sovereign immunity (Art. I, § 14, Ala. Const. of 1901), in light of the separation-of-powers principle (Art. III, § 43, Ala. Const. of 1901), if the burden on the plaintiff is found to significantly outweigh the benefits of applying State-agent immunity to the defendant State-agent, then I would conclude that the defendant State-agent is not entitled to immunity.
The parties, however, have not had the opportunity to brief this Court on the applicability of the balancing test, because this Court's original per curiam opinion in Ex parte Cranman was released on November 24, 1999, after the parties had filed their briefs in this case. I would order the parties to file supplemental briefs on the issue whether the burden on Sellers significantly outweighs the benefits of applying State-agent immunity to Nurse Flynn in the performance of her University-related health-care responsibilities. I therefore dissent from the denial of the writ of mandamus.