This case involves a dispute over whether the parties entered into a lease of shopping center property. Wilma Corporation, the proposed landlord, brought claims alleging breach of contract and fraud against the proposed tenants: Fleming Foods of Alabama, Inc., Fleming Companies, Inc., Dixieland Food Stores, Inc., and Aubrey Cochran (collectively referred to as "Fleming"). The trial court entered a summary judgment in favor of the proposed tenants on both claims. Wilma Corporation appeals, and we affirm.
Wilma Corporation undertook development of a shopping center in Evergreen, Alabama. Pursuant to its development plan, it began negotiations in 1986 with Dixieland, a wholly owned subsidiary of the Fleming companies, for placement of a Piggly Wiggly grocery store in the shopping center. Initially, Edwin M. McIntyre, Jr., the president of Wilma Corporation, contacted Aubrey Cochran, the director of retail development for Dixieland, regarding the proposed lease of space for a Piggly Wiggly store in Evergreen. The parties continued negotiations intermittently over the next three years.
The parties met on May 30, 1989, to discuss the terms of a proposed lease agreement. Wilma Corporation alleges that the purpose of the meeting was to finalize the lease agreement. Fleming, however, contends that the meeting was held for Cochran to obtain the information necessary to complete paperwork for the preparation of a lease agreement. McIntyre represented Wilma Corporation at this meeting, while Cochran represented Dixieland. John Milner, an architect employed by Wilma Corporation, was also present at the meeting. The meeting resulted in a document called "Build and Lease Agreement and Sublease Lease Information," which specified the terms of an anticipated lease.
Neither party treated this document as a final copy of the lease. Fleming contends that the document was a working draft from which Cochran was to draft a recommendation for lease to Fleming. Wilma Corporation alleges that the document was more binding, but it concedes that this document was not the final lease. Wilma Corporation asserts that Cochran told McIntyre that Fleming would complete and execute the lease, based on the information in the document, and that Wilma Corporation would receive a final copy of the lease *Page 361 
three weeks after the meeting on May 30, 1989.
Wilma Corporation asserts that at the meeting on May 30, 1989, Cochran fraudulently misrepresented that the lease agreement was a "done deal" when Cochran signed the lease order, otherwise referred to as the "Build and Lease Agreement and Sublease Lease Information." Specifically, Wilma Corporation alleges that it relied on Cochran's statement, which was described by McIntyre in deposition:
 "A. I specifically asked him, 'Mr. Cochran, would it be okay if I go ahead and tear [down] the other two buildings . . . because of the time factor?' And he said, 'As far as I'm concerned, yes, sir, it's a done deal. When I signed this lease order, it automatically made it a done deal.'
". . . .
 "A. . . . And he said, 'As far as I'm concerned the deal is done. When I signed this lease order, that made it a done deal, and you will be getting your lease in three weeks.' "
Milner agrees that Cochran made this statement, although Cochran denies it.
Wilma Corporation alleges that, in reliance on Cochran's alleged misrepresentation, it demolished two buildings, one of which was worth approximately $150,000 and produced rental income of approximately $1,000 per month, and incurred other costs, in anticipation of constructing and leasing a building to Fleming for the grocery store. After Fleming notified Wilma Corporation that it did not plan to proceed with the lease agreement, Wilma Corporation sued Fleming, alleging breach of contract and fraud.
The trial court entered a summary judgment in favor of Fleming on both claims, holding that the contract claim was barred by the Statute of Frauds, Ala. Code 1975, § 8-9-2. With regard to the fraud claim, the trial court held that Wilma Corporation had presented no evidence of an intent by Fleming to deceive at the time of the alleged misrepresentation, on May 30, 1989. In addition, the trial court held that Wilma Corporation had presented no evidence that it justifiably relied on the alleged misrepresentation by Cochran.
On appeal, Wilma Corporation argues that the trial court erred in entering the summary judgment on the contract claim because, it argues, it produced a writing sufficient to satisfy the Statute of Frauds. Alternatively, Wilma Corporation argues that Fleming is equitably estopped from asserting the Statute of Frauds as an affirmative defense because, it argues, Fleming acted fraudulently. Wilma Corporation also challenges the summary judgment on the fraud claim. Wilma Corporation contends that it presented sufficient evidence of each element of the claim to survive a motion for summary judgment.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the defendant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988) (citing Chiniche v. Smith,374 So.2d 872 (Ala. 1979)); Rule 56(c), A.R.Civ.P. The movant has the burden of "showing material facts, which, if uncontested, entitle the movant to judgment as a matter of law." Berner v.Caldwell, 543 So.2d 686, 688 (Ala. 1989); Woodham v. NationwideLife Ins. Co., 349 So.2d 1110, 1111 (Ala. 1977). Once the movant has made this showing, the opposing party then has the burden of presenting evidence creating a genuine issue of material fact. Danford v. Arnold, 582 So.2d 545, 546 (Ala. 1991); Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989).
The present action was filed after June 11, 1987; therefore, the nonmovant must establish the existence of a genuine issue of material fact by presenting substantial evidence. Ala. Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, supra. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *Page 362 West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990); Harrell v. Reynolds Metals Co., 495 So.2d 1381,1383 (Ala. 1986); Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986).
 I. CONTRACT CLAIM A. Statute of Frauds
Wilma Corporation argues that Fleming breached a contract for the lease of real property for a term of 15 years. Fleming, however, contends that the purported lease is not valid because, it argues, the purported lease does not comply with the Statute of Frauds. The Statute of Frauds provides, in pertinent part:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
 "(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof;
". . . .
 "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller."
Ala. Code 1975, § 8-9-2.
Wilma Corporation concedes that the agreement — a contract for the sale of an interest in real property for a term greater than one year — falls within the Statute of Frauds. However, Wilma Corporation contends that it produced a writing sufficient to satisfy the Statute. The Statute of Frauds does not require a formal or complete contract; rather a note or memorandum containing the essential elements of the agreement, signed by the party to be charged, is sufficient. Bunch v.Garner, 208 Ala. 271, 272, 94 So. 114, 115 (1922).
As evidence of the parties' contract, Wilma Corporation presented the "Build and Lease Agreement and Sublease Lease Information," which Cochran signed, as Dixieland's store development representative, on May 30, 1989. This document includes the essential terms of the lease, including the lessor's name and address, lessee's name, location of the property, term of the lease, options, base rent, percentage rent, payment method, tax obligations, detailed agreements for interior and exterior requirements for the building, size of the parking lot, common area maintenance, liability insurance obligations, and additional space requirement guarantees for the supermarket. Although Wilma Corporation contends that this writing was sufficient to create an enforceable contract, neither party treated it as the final lease agreement.
Wilma Corporation contends that Cochran's signature on the "Build and Lease Agreement and Sublease Lease Information" is sufficient to bind Fleming. Fleming, however, argues that Cochran had no authority to enter into the alleged contract with Wilma Corporation. Further, Fleming argues that Cochran's authority to enter into a contract that is subject to the Statute of Frauds on behalf of Fleming must be in writing.See Hight v. Byars, 569 So.2d 387, 388 (Ala. 1990). In Hight, this Court noted that it is a well-settled principle "that in order for an agent to act on a principal's behalf regarding a matter controlled by the Statute of Frauds, the agent's authority must be in writing." Id. The Court also acknowledged that "any contract made by an agent without written authority is void if the contract itself is one that has to be in writing." Id. (emphasis in original); see also Cammorata v.Woodruff, 445 So.2d 867, 872 (Ala. 1983); Thompson v. New SouthCoal Co., 135 Ala. 630, 634, 34 So. 31, 32 (1903). *Page 363 
The record in this case is devoid of any writing authorizing Cochran to enter into a lease agreement with Wilma Corporation on behalf of Fleming. Wilma Corporation does not argue that Cochran had such implied or apparent authority to enter into the agreement that a written authorization would not be required. See Black Diamond Coal Mining Co. v. Jones Coal Co.,204 Ala. 506, 86 So. 27 (1920) (holding that an agreement signed by the company's president, who was also the company's "alter ego," was sufficient to bind the company without a written authorization).
Because Wilma Corporation presented no evidence of a writing granting Cochran actual authority and no evidence of Cochran's implied or apparent authority, Cochran's signature is not sufficient to bind Fleming. Therefore, the document Wilma Corporation presented does not satisfy the Statute of Frauds.
 B. Equitable Estoppel
Alternatively, Wilma Corporation argues that the doctrine of equitable estoppel bars Fleming's use of the Statute of Frauds as a defense. This Court has recognized two exceptions to the Statute of Frauds: "the statutory part performance exception [and] an exception based on the defendant's fraudulent conduct, a form of equitable estoppel." Durham v. Harbin, 530 So.2d 208,212 (Ala. 1988). Wilma Corporation does not argue the applicability of the part performance exception but argues that Cochran's alleged misrepresentation constitutes fraudulent conduct sufficient to estop Fleming from asserting the Statute of Frauds as a defense.
The fraudulent conduct exception requires a showing of "inherent fraud — that is, an intention not to perform operating from the inception of the transaction." Durham, 530 So.2d at 212. This Court has held that "a mere refusal to perform a promised act is insufficient evidence of such inherent fraud to allow equity's intervention." Id.; see alsoDarby v. Johnson, 477 So.2d 322, 326-27 (Ala. 1985). Wilma Corporation presented no evidence that either Fleming or Cochran, at the very time when Cochran made the alleged misrepresentation, intended not to perform. Therefore, Wilma Corporation has not made the showing of fraud inherent from the inception of the transaction that is required to estop Fleming from relying on the Statute of Frauds defense.
Wilma Corporation cites Dean v. Myers, 466 So.2d 952, 955
(Ala. 1985), in support of its equitable estoppel argument. InDean, this Court held that the "acceptance of benefits may give rise to estoppel, particularly if the promisee has fully performed." Wilma Corporation does not argue, nor does the evidence indicate, that Wilma Corporation has fully performed its part of the agreement or that Fleming obtained any benefits from Wilma Corporation's actions. Therefore, this argument is without merit.
Because the equitable estoppel exception does not apply and because Wilma Corporation presented no evidence, in writing or otherwise, of Cochran's authority to enter into this agreement on behalf of Fleming, the Statute of Frauds bars Wilma Corporation's breach of contract claim against Fleming. Accordingly, the summary judgment is due to be affirmed with respect to that claim.
 II. FRAUD CLAIM
Wilma Corporation alleges that Fleming misrepresented that the lease agreement was a "done deal" when Cochran signed the "Build and Lease Agreement and Sublease Lease Information" on May 30, 1989. Wilma Corporation contends that Cochran's statement constituted a fraudulent misrepresentation of a present, material fact: that the parties had reached an agreement. Fleming, however, contends that Wilma Corporation made a claim of promissory fraud, which claim requires proof of two additional elements. See Padgett v. Hughes, 535 So.2d 140,142 (Ala. 1988) (where this Court stated that two elements in addition to the elements of fraud must be satisfied to prevail on a promissory fraud claim; these additional elements are "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, *Page 364 
and . . . proof that the defendant had an intent to deceive").
The trial court construed Wilma Corporation's complaint to allege a claim of promissory fraud and required Wilma Corporation to present evidence of the two additional elements of promissory fraud. The trial court held that Wilma Corporation, in response to the properly supported summary judgment motion, had not presented substantial evidence that, at the time of the alleged misrepresentation, Fleming intended not to perform the acts promised. The trial court also held that the summary judgment was proper on the basis that Wilma Corporation had presented no evidence of justifiable reliance.
In support of its contention that it made a claim of fraudulent misrepresentation rather than of promissory fraud, Wilma Corporation cites Standard Furniture Manufacturing Co. v.Reed, 572 So.2d 389 (Ala. 1990), in which the distinction between fraudulent misrepresentation and promissory fraud was at issue. In Reed, the plaintiff claimed that his employer had told him that if he took an early retirement he would receive a lump sum payment of $38,000 from the pension plan. In reliance on that statement, Reed retired early but was paid only $11,242.82 from the pension plan. This Court stated that the employer "represented a present fact: the amount Reed would receive in the future based upon the present state of the pension fund." Reed, at 392. Therefore, this Court held that Reed needed only to prove the elements of fraudulent misrepresentation.
Wilma Corporation contends that it, like the plaintiff inReed, asserted a claim of fraudulent misrepresentation. Wilma Corporation argues that its complaint asserts a claim that Cochran, on behalf of Fleming, misrepresented a present fact — that the parties had a "done deal," that is, that the parties had reached an agreement on the terms of the lease. Wilma Corporation argues that this constitutes a claim of fraudulent misrepresentation rather than of promissory fraud. Wilma Corporation asserted in its complaint, and presented evidence, that the alleged misrepresentation — that they were in agreement — involved the present state of the parties' minds.
Like the plaintiff in Reed, the plaintiff here alleged that the defendant misrepresented a present fact, that which was to be performed in the future. Therefore, Wilma Corporation made a claim of fraudulent misrepresentation. Accordingly, Wilma Corporation need not proffer substantial evidence of the additional elements of promissory fraud in order to survive a motion for summary judgment. Therefore, the trial court erred in basing the summary judgment on the grounds that Wilma Corporation had not presented substantial evidence of the additional elements of promissory fraud.
Wilma Corporation's claim of fraudulent misrepresentation is comprised of four elements: (1) a false representation; (2) concerning a material fact; (3) that is justifiably relied upon by the plaintiff; and (4) that causes damage to the plaintiff as a proximate result of the reliance. Reed, supra, at 391;Bank of Red Bay v. King, 482 So.2d 274, 281 (Ala. 1985). Thus, once Fleming, in support of its summary judgment motion, makes a prima facie showing that one of these elements is missing from the plaintiff's case, Wilma Corporation must present substantial evidence creating a material issue of fact as to that element in order to survive Fleming's motion for summary judgment. Harper v. First Alabama Bank of Dothan,514 So.2d 1366, 1368 (Ala. 1987); Rule 56, A.R.Civ.P.
Fleming contends, and the trial court held, that the summary judgment was appropriate because Wilma Corporation presented no evidence of justifiable reliance. Wilma Corporation, however, argues that under the circumstances of the negotiations, it justifiably relied on Cochran's alleged statement that the parties had reached an agreement.
The element of justifiable reliance is assessed according to the circumstances surrounding the representation:
 "A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its *Page 365 
ramifications, has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.' "
Hickox v. Stover, 551 So.2d 259, 263 (Ala. 1989) (quotingSouthern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1091-92
(Ala. 1989) (Hornsby, C.J., concurring specially)). This standard requires the party making the representation to refrain from dishonest, untrue, and recklessly inaccurate statements, while requiring the party receiving the representation to be alert to statements that are patently false. The burden of knowing the truthfulness of a statement is placed on the party making the statement.
Wilma Corporation argues that it justifiably relied on Cochran's alleged misrepresentation that the lease agreement was a "done deal" when Cochran signed the lease order. Wilma Corporation presented evidence that Cochran signed the "lease order," otherwise called the "Build and Lease Agreement and Sublease Lease Information" at the meeting on May 30, 1989, when Cochran allegedly made the misrepresentation. Wilma Corporation argues that because Cochran fulfilled the only condition he allegedly said was required to finalize the agreement, Wilma Corporation's reliance was justifiable.
Wilma Corporation also presented evidence that Cochran was the primary source of information regarding the lease proposal and that McIntyre believed that the purpose of the May 30, 1989, meeting was to finalize the lease agreement. Wilma Corporation argues that it, therefore, expected Cochran to come to the meeting with his superiors' prior approval of the lease and their authority for him to finalize the lease on their behalf. Thus, Wilma Corporation contends that under the circumstances of these negotiations, it justifiably relied on Cochran's statement.
To establish that Wilma Corporation could not have justifiably relied on Cochran's alleged misrepresentation, Fleming presented evidence that Wilma Corporation knew that Cochran did not have authority to approve the lease agreement. Fleming presented a copy of a letter Cochran sent to McIntyre, dated November 15, 1988, which stated that Cochran did not have the authority to approve the lease agreement but that he would have to obtain the approval of his superiors before the lease agreement would be final.
Fleming further contends that Cochran could not have had Fleming's prior approval of the lease because May 30, 1989, was the first time the parties had agreed on the details of the lease. Cochran, therefore, had had no opportunity to ask his superiors for their approval of the alleged agreement before Cochran allegedly told McIntyre that the agreement was a "done deal." Therefore, Fleming argues that Wilma Corporation could not have justifiably relied on Cochran's alleged misrepresentation.
Fleming also presented evidence that John Milner, an architect and developer who undisputedly acted as an agent for Wilma Corporation, knew that any lease agreement would have to be approved by Cochran's superiors before the agreement would be finalized. Milner testified in deposition as follows:
 "Q. And, did you understand all along or at any time that Mr. Cochran basically made proposals or accumulated and put together data and information and [that] final decisions on these kinds of things were made by people other than himself?
"A. Yeah, I think so.
". . . .
 "Q. Isn't it correct that from the beginning and on more than one occasion Mr. Cochran made it clear that a final approval on this project was not his but had to be given by some people above him?
"A. Yeah."
Fleming contends that Milner's knowledge is imputed to Wilma Corporation because Milner acted as Wilma Corporation's agent. Fleming argues that, based on Milner's knowledge as well as its own, Wilma Corporation had to "close [its] eyes to avoid the discovery of the truth" and therefore did not justifiably rely on Cochran's alleged statement. *Page 366 
Wilma Corporation acknowledges that it received from Cochran the letter stating that Cochran would have to obtain the approval of his superiors to finalize the lease agreement. Wilma Corporation further concedes that it knew that Cochran did not have Fleming's authority to act on its behalf. In addition, Wilma Corporation concedes that Milner acted as its agent and that, through Milner, it knew that Cochran did not have the authority to make the final decision on the lease agreement.
An agent's knowledge concerning the subject matter of the agency is imputed to the principal. Carnival Cruise Lines, Inc.v. Goodin, 535 So.2d 98, 103-04 (Ala. 1988); Bynon v. Citizens'Bank of Carbon Hill, 221 Ala. 626, 130 So. 391 (1930). Because Milner knew that Cochran did not have the authority to act on Fleming's behalf, Wilma Corporation must be taken as knowing that also. In addition, Wilma Corporation admits that it had notice that Cochran did not have authority to approve the lease. Wilma Corporation presented no evidence that Fleming had given such written authority for Cochran to act on its behalf that Cochran's signature would bind Fleming notwithstanding the Statute of Frauds.
Furthermore, both Wilma Corporation and Fleming are corporate entities engaging in a business transaction involving the lease of land. This case does not involve a consumer transaction, but an arm's-length transaction between two corporations whose agents knew or should have known of the requirements of the Statute of Frauds. Because Wilma Corporation deals in property development and leasing, it either knew or should have known that the Statute of Frauds prohibits an agent from entering into a contract for the lease of land on a principal's behalf without written authority from the principal.
In summary, Wilma Corporation participated in a commercial transaction within its usual field of activity, the acquisition and development of real property. The requirement that real estate transactions be in writing is well known in our society, particularly in the context of commercial business transactions. Further, Wilma Corporation had not seen the written authorization that it knew was required for Cochran to execute the lease. Finally, Wilma Corporation knew that no properly executed lease was executed by Fleming at the May 30, 1989, meeting.
Therefore, "given the particular facts of [Wilma Corporation's] knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications," we conclude that Wilma Corporation has not presented substantial evidence creating a genuine issue as to whether it had "justifiably relied" on the alleged misrepresentation. Hickox v. Stover, 551 So.2d 259, 263
(Ala. 1989) (quoting Southern States Ford, Inc. v. Proctor,541 So.2d 1081, 1091-92 (Ala. 1989) (Hornsby, C.J., concurring specially)).
Although Fleming makes a strong argument that Cochran's statement was merely a statement of his opinion, we pretermit any discussion of this issue because we have disposed of this case on the issue of justifiable reliance. The summary judgment in favor of Fleming is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.