791 So.2d 915 (2000)
Kaytlin F. WIMPEE, by her mother and next friend Christy Lee JOHNSTON; and Christy Lee Johnston, individually
v.
Dr. Felicia STELLA and Dr. Scott Striplin.
1971774.
Supreme Court of Alabama.
September 1, 2000.
Rehearing Denied November 22, 2000.
*916 Michael A. Worel and David G. Wirtes, Jr., of Cunningham, Bounds, Yance, Crowder & Brown, L.L.C., Mobile, for appellants.
W. Boyd Reeves, M. Kathleen Miller, Timothy D. Ryan, and Christopher B. Estes of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C., Mobile, for appellees.

On Application for Rehearing
BROWN, Justice.
The memorandum of November 24, 1999, is withdrawn and the following opinion is substituted therefor.
The plaintiffs Kaytlin F. Wimpee and Christy Lee Johnston appeal from a summary judgment entered in favor of the defendants Dr. Felicia Stella and Dr. Scott Striplin.
Around 4:30 a.m. on June 29, 1994, Christy Lee Johnston, age 20, arrived at the University of South Alabama Medical Center ("USA Medical Center") in labor. Dr. Stella, a fourth-year resident, and Dr. Striplin, a first-year resident/intern, provided care and treatment to Johnston during her labor and the subsequent delivery of her daughter, Kaytlin Wimpee.
The State of Alabama owns and operates the University of South Alabama ("USA"). USA, in turn, owns and operates USA Medical Center. In June 1994, USA employed both Dr. Stella and Dr. Striplin as residents in training, and they were assigned to USA Medical Center. USA paid Drs. Stella and Striplin a regular salary at all times while they were residents. Both Dr. Stella and Dr. Striplin were working in the line and scope of their employment as residents with USA at all times during the events at issue in this case.
Upon Johnston's admission to USA Medical Center, the baby's condition was monitored by several electronic devices, including a fetal-heart monitor and a fetalscalp electrode. Johnston was also administered Pitocin, to augment labor and delivery. After Johnston was administered the Pitocin, her contractions increased. Johnston contends that the fetal monitors demonstrated changes in the baby's condition and that the changes indicated fetal distress and necessitated the discontinuation of Pitocin. Drs. Stella and Striplin assert that there was no evidence to indicate that the baby was in fetal distress, and, thus, that there was no reason to discontinue the Pitocin. According to Johnston, Dr. Stella initially informed her that a cesarean-section delivery was warranted[1] and she was moved to a delivery *917 room where a cesarean delivery could be performed. Once in the delivery room, however, Drs. Stella and Striplin delivered the child vaginally by the use of a vacuum extractor. Within two hours of her birth, the child, named Kaytlin, experienced seizures, which one physician attributed to "perinatal asyphxia and ischemia." Kaytlin presently suffers from a seizure disorder and has motor defects on her left side.
Johnston, individually and on behalf of her daughter Kaytlin Wimpee, filed a medical-malpractice action against Drs. Stella and Striplin. Specifically, Johnston contends that Drs. Stella and Striplin negligently or wantonly failed to perform a cesarean section and that, because of their alleged medical negligence or wantonness, Kaytlin suffered serious injuries.
Both Dr. Stella and Dr. Striplin filed a motion for summary judgment. Following a hearing, the trial court entered a summary judgment in favor of Drs. Stella and Striplin on the ground that they were immune from suit, as employees of USA Medical Center engaging in discretionary functions.

I.
Wimpee and Johnston appealed. They contend that the trial court erred in holding that Drs. Stella and Striplin, as employees of USA Medical Center, were immune from liability on the basis that the actions complained of occurred while they were engaged in performing discretionary functions.
Our review of a summary judgment is de novo.
"In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is `substantial' if it is of `such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).
Wimpee and Johnston argue that Drs. Stella and Striplin were not entitled to discretionary-function immunityi.e., State-agent immunitybecause, as residents, they were subject to clearly delineated policies and procedures and worked within well-defined limits. Thus, they claim, Dr. Stella and Dr. Striplin's treatment of Johnston involved ministerial acts, rather than discretionary acts.
Are Drs. Stella and Striplin protected from Wimpee and Johnston's claims by the doctrine of State-agent immunity? Our recent decision in Ex parte Cranman, 792 So.2d 392 (Ala.2000), traces the evolution of State-agent immunity, restates the law *918 of State-agent immunity, and, according to that restatement, decides this issue; that is, whether a physician employed by a state university in its health facility is immune from claims alleging negligence in treating a patient at that health facility. Cranman holds that the physician is not protected by the doctrine of State-agent immunity:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, lawenforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405. Dr. Stella and Dr. Striplin's treatment of Christy Lee Johnston does not fit within any of the categories of immune State-agent conduct set out in the Cranman restatement. Despite being State-employed physicians, Drs. Stella and Striplin are not immune from liability for the claims asserted by the plaintiffs. See also Ex parte Flynn, 776 So.2d 99 (Ala. 2000), and Ex parte Rizk, 791 So.2d 911 (Ala.2000). The trial judge erroneously entered the summary judgment for Drs. Stella and Striplin. That judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.
APPLICATION GRANTED; MEMORANDUM OF NOVEMBER 24, 1999, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
MADDOX and SEE, JJ., dissent.
SEE, Justice (dissenting).
I dissent from the reversal of the summary judgment entered in favor of the defendant resident physicians, Drs. Stella and Striplin. I would affirm the summary *919 judgment, on the ground that Drs. Stella and Striplin are entitled to discretionary-function, or State-agent, immunity.
I dissent for the reasons stated in my dissent in Ex parte Cranman, 792 So.2d 392, 413 (Ala.2000) (substituted opinion on application for rehearing). I would apply to the facts of this case the balancing test stated in the November 14, 1999, Cranman opinion withdrawn by this Court on June 16, 2000:
"Except where the Constitution or laws of the United States or the Constitution, laws, regulations, or rules of this state enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or where the governmental agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law; a governmental agent is immune from civil liability where the conduct made the basis of the claim against the agent is based upon the agent's formulation of plans, policies, or designs, or where the agent otherwise makes decisions such as those made in the context of the following activities:
". . . .
"(6) all other instances where acts or decisions, including those concerning the safety, health, well-being, fitness, competence, development, or confinement of persons, cannot be challenged without imposing a burden arising from interference with a coequal branch of government that exceeds the benefit of the challenging party's right to a judicial remedy."
(See my dissent in Cranman, 792 So.2d at 414-15, where I quote from the withdrawn opinion.)
Drs. Stella and Striplin, in treating their patient Christy Johnson and her newborn, Kaytlin, were engaged in discretionary functions. See Smith v. Arnold, 564 So.2d 873 (Ala.1990); Smith v. King, 615 So.2d 69 (Ala.1993). The Alabama Legislature established the University of South Alabama as "a state institution of higher learning" and in order "to carry into effect the [Legislature's] purposes," and authorized the governing body of the University, the board of trustees, to "prescribe courses of instruction" and to "do whatever else they may consider in the best interest of the institution." Ala.Code 1975, §§ 16-55-1 and 16-55-4. In furtherance of its educational purpose, the University has created a college of medicine, and, in conjunction with the college of medicine, the University owns and operates the University of South Alabama Medical Center ("USAMC").[2] See § 16-55-3 (authorizing the board of trustees to hold and dispose of any real and personal property). The USAMC provides medical education and training to medical students and resident physicians. As resident physicians employed by the University, Drs. Stella and Striplin were furthering the educational purpose of the University and its college of medicine when they provided medical care and treatment to Ms. Johnson and her baby.[3] The denial of State-agent immunity *920 to Drs. Stella and Striplin and other resident physicians at the University would be expected to hinder the educational purpose of the University by impeding the University's ability to attract, educate, and train medical students and resident physicians, and it would thereby reduce the availability of qualified physicians for the citizens of the State of Alabama. Therefore, "because [Drs. Stella and Striplin] were exercising a discretionary function and because it does not appear in this case that the burden on the plaintiff[s] significantly outweighs the benefits of applying State-agent immunity to [Drs. Stella and Striplin], the balance of the § 13 and § 14 [Alabama Constitution] policies, in light of § 43, favors the application of discretionary-function immunity to [Drs. Stella and Striplin] in the performance of their University-related health-care responsibilities." Ex parte Cranman, 792 So.2d at 417 (on application for rehearing) (See, J., dissenting). I therefore dissent from the reversal of the trial court's judgment.
NOTES
[1] Drs. Stella and Striplin also dispute this contention.
[2] In Sarradett v. University of South Alabama, 484 So.2d 426, 427 (Ala.1986), this Court held that in operating the USAMC the University is performing a governmental function, and, thus, that the USAMC is a state entity immune from suit under the Alabama Constitution of 1901, art. I, § 14.
[3] This Court has held that state-employed physicians engage in discretionary functions in making health-care decisions. See, e.g., Smith v. Arnold, 564 So.2d 873 (Ala.1990). Although this factor alone is not determinative, it does favor the application of Stateagent immunity. See this Court's June 16, 2000, opinion in Ex parte Cranman, 792 So.2d at 413 (See, J., dissenting).