814 So.2d 232 (2001)
Charlotte Elaine DUNNAM, as administratrix of the estate of James Brannan Dunnam, Sr., deceased
v.
Dr. Fortunate OVBIAGELE et al.
1000128.
Supreme Court of Alabama.
July 20, 2001.
Rehearing Denied September 7, 2001.
*234 Winn Faulk of Faulk & Reed, L.L.P., Montgomery, for appellant.
M. Kathleen Miller and Chris B. Estes of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C., Mobile, for appellees.
HARWOOD, Justice.
Charlotte Elaine Dunnam, as administratrix of the estate of her late husband, James Brannan Dunnam, Sr., appeals a summary judgment entered for the defendants Dr. Fortunate Ovbiagele, Dr. Luis Marco, and Dr. Ayasha Meloukhia (collectively referred to as "the Doctors"). We affirm in part, reverse in part, and remand.
On January 2, 2000, Dunnam sued Charter Behavioral Health System of Mobile ("Charter"), the Doctors, and fictitiously named defendants who were agents or employees of Charter or its affiliates. Dunnam's complaint alleged that the defendants had negligently released her husband from Charter on January 1, 1998, and that as a result her husband had committed suicide on January 10, 1998. On May 11, 2000, Charter filed with the trial court a notice that it had filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware on February 16, 2000, and that any actions against it had been stayed pursuant to 11 U.S.C. § 362.
On June 20, 2000, Dr. Marco and Dr. Meloukhia jointly moved for a summary judgment, arguing (1) that the applicable statute of limitations barred the plaintiff's claim because, they said, when she filed the complaint she did not have a bona fide intent to have the complaint immediately served on them (and that it was served after the two-year limitations period had expired); and (2) that they were state employees when the alleged negligence occurred and were entitled to state-agent immunity based upon the rule stated in Ex parte Cranman, 792 So.2d 392 (Ala.2000). Each of those defendants attached his affidavit to the motion. Dr. Marco's affidavit stated that during his care and treatment of James Dunnam (1) he was board-certified in adult psychiatry and geriatric psychiatry; (2) he was employed by the University of South Alabama as a professor of psychiatry and behavioral sciences and had an employment agreement with the University of South Alabama Health Services Foundation; (3) Charter allowed the University of South Alabama to conduct its clinical psychiatric program within its medical-care programs; (4) he was acting in his capacity as a professor and attending physician of the University of South Alabama and his actions were taken in the performance of his health-care responsibilities; and (5) his actions regarding care and treatment involved discretionary health-care determinations that required his exercise of professional judgment and discretion. Dr. Meloukhia's affidavit stated that during his care and treatment of James Dunnam (1) he was enrolled as a second-year resident in the University of South Alabama College of Medicine's Department of Psychiatry and his training during his residency included a rotation at Charter; (2) he was employed by the University of South Alabama as a resident physician and was acting in that capacity and within the line and scope of his employment; and (3) his actions regarding care and treatment involved discretionary health-care determinations that required his exercise of professional judgment and discretion.
On July 14, 2000, Dr. Fortunate Ovbiagele moved for a summary judgment, making the same statute-of-limitations and state-agent-immunity arguments as Dr. Marco and Dr. Meloukhia. He also incorporated *235 by reference the affidavits filed by Dr. Marco and Dr. Meloukhia and attached his own affidavit, in which he made statements that were substantially the same as the statements made in Dr. Meloukhia's affidavit. On August 18, 2000, Dunnam filed a motion in opposition to the summary-judgment motions filed by the Doctors. In response to the statute-of-limitations argument, Dunnam attached the affidavits of her counsel and two of his assistants to show that after the filing of the complaint on January 2, 2000, they had diligently sought the addresses of the Doctors. In response to the state-agent-immunity argument, Dunnam attempted to distinguish the facts of this case from those presented in Cranman.
The case action summary indicates that the trial court conducted a hearing on the motions on August 18, 2000. A letter dated August 25, 2000, submitted to the trial court by counsel for the Doctors, also refers to the August 18 hearing. On August 30, 2000, the trial court entered a summary judgment for the Doctors, based upon the state-agent-immunity arguments they had advanced under the authority of Cranman. On September 1, 2000, the trial court entered an amended order pursuant to Rule 54(b), Ala. R. Civ. P., to make final the summary judgment for the Doctors.
Dunnam argues that the trial court erroneously entered the summary judgment for the Doctors because their alleged acts of negligence occurred in a private hospital and, she says, the Doctors were thus not entitled to state-agent immunity. She also relies on Cranman to argue that, to the best of her knowledge, no statute, rule, or regulation applicable to this case would provide state-agent immunity for the Doctors. Dunnam otherwise concedes that the Doctors were employed by a state agency, the University of South Alabama; that their performing services at Charter was somehow related to their obligations to the State; and that there is no evidence to suggest that they were compensated by any source other than the State. In reply, the Doctors argue that Cranman provides for state-agent immunity in "counseling or releasing persons of unsound mind," 792 So.2d at 405, and they rely on opinions of this Court holding similar mental-health-related decisions to be discretionary in nature. They also argue that § 22-52-10.4, Ala.Code 1975, requires the exercise of their discretion in the commitment or release of persons requiring mental-health treatment, and, therefore, that that statute provides a basis for a holding that they have immunity in this case. Section 22-52-10.4 states, in pertinent part:
"(a) A respondent may be committed to inpatient treatment if the probate court finds based upon clear and convincing evidence that: (i) the respondent is mentally ill; (ii) as a result of the mental illness the respondent poses a real and present threat of substantial harm to self and/or others...."
They also reiterate their original argument concerning the statute of limitations, arguing that Dunnam waited for over three months after filing her complaint to attempt to effectuate service on them.
Our review of a summary judgment is de novo:
"In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there *236 is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is `substantial' if it is of `such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).

I. State-Agent Immunity

In Cranman, four of the eight participating Justices, with two Justices concurring in the judgment, proposed a new rule for determining whether a state agent is entitled to immunity:
"We decline to label all discretionary acts by an agent of the State, or all acts by such an agent involving skill or judgment, as `immune' simply because the State has empowered the agent to act. Such an expansive view of the power of the State to act with immunity for its agents would be inconsistent with the rights secured by [Art. I,] § 13 [of the Alabama Constitution].
". . .
"We therefore restate the rule governing State-agent immunity:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities *237 of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405. (Emphasis original). Employing this restatement of the rule, the plurality opinion concluded that physicians at the Russell Student Health Center of the University of Alabama were not entitled to state-agent immunity because "their treatment of Matthew Cranman [did] not fit within any category of conduct recognized ... as immune." 792 So.2d at 406.
A majority of this Court later held the Cranman restatement of the rule to control the outcome in Ex parte Rizk, 791 So.2d 911 (Ala.2000), and the majority explicitly adopted the Cranman restatement of the rule in Ex parte Butts, 775 So.2d 173, 177-78 (Ala.2000). In other cases employing Cranman, this Court has held that medical residents are not entitled to state-agent immunity. See Hauseman v. Univ. of Alabama Health Servs. Found., 793 So.2d 730 (Ala.2000); Wimpee v. Stella, 791 So.2d 915 (Ala.2000); and Ex parte Rizk, supra. The holdings of these cases establish a general rule that medical professionals who are employed by the State are not entitled to immunity solely because the regular performance of their work requires the exercise of discretion. Rather, immunity is conferred only when a state agent meets one of the criteria set out in Cranman. Thus, the question is whether, as a matter of law, these Doctors fit into the exception provided for those "exercising judgment in the discharge of duties imposed by statute, rule, or regulation in... counseling or releasing persons of unsound mind." Cranman, 792 So.2d at 405.
In support of their motions for summary judgment, the Doctors failed to cite, or to attach to their supporting affidavits, copies of any statute, rule, or regulation that purported to govern the exercise of their duties at Charter. Their affidavits stated only that their actions regarding the care and treatment of James Dunnam involved discretionary health-care determinations that required the exercise of professional judgment and discretion. Such health-care determinations are the same as were determined in Cranman to be insufficient to confer state-agent immunity. See also Hauseman v. University of Alabama Health Servs. Found.; Wimpee v. Stella; and Ex parte Rizk, supra. Further, the Doctors' reliance, asserted for the first time on appeal, on the statutory standard governing the commitment of an individual for inpatient treatment, codified as § 22-52-10.4, as support for their argument, is not persuasive. That section states the findings that are necessary for a probate court to commit an individual. Guided by that section, a probate court, which is not a state agent, is required to decide whether to commit, not whether to release, a person who is mentally ill. We therefore conclude that the trial court erred in entering the summary judgment on the basis of state-agent immunity, because the Doctors provided no statute, rule, or regulation that governs the exercise of their duties in regard to releasing persons of unsound mind.

II. Statute of Limitations

The Doctors further argued to the trial court, and they argue here, that the limitations period applicable to Dunnam's claims against them had expired before they were served with her complaint, because, they say, she waited for over three months to effect, or to attempt to effect, service upon them. They cite opinions of this Court, interpreting Rule 3, Ala. R. Civ. P., as requiring both the filing of a complaint and *238 a bona fide intent to have it immediately served in order to commence an action for statute-of-limitations purposes. See Maxwell v. Spring Hill College, 628 So.2d 335 (Ala.1993); Latham v. Phillips, 590 So.2d 217 (Ala.1991); and Ward v. Saben Appliance Co., 391 So.2d 1030 (Ala.1980). The Doctors argue that Dunnam, as a matter of law, allowed the limitations period to expire by not making the clerk aware that she was diligently attempting to develop addresses for proper service of process on Dr. Meloukhia and Dr. Ovbiagele. They quote a portion of this Court's opinion in Pettibone Crane Co. v. Foster, 485 So.2d 712, 714 (Ala.1986):
"[W]here it is impossible to supply instructions for service of process upon a defendant at the time of filing the complaint, the plaintiff must apprise the clerk of that fact and show that every effort has been made to obtain the appropriate information and must inform the clerk that, when it is obtained, it will be supplied immediately."
They further argue, relying on Pettibone, that the question whether such a bona fide intent existed at the time of filing is to be determined by an objective standard and that the affidavits produced by Dunnam's counsel and his assistants state only their subjective intent. The Doctors argue that, "[v]iewed objectively, the actions of the plaintiff fail to indicate a bona fide intent, at the time of filing, to proceed with the action." Id. at 714.
The record shows that when Dunnam filed the complaint on January 2, 2000, Dunnam's counsel had an address at which Dr. Marco could be served, although he did not have reliable addresses for Dr. Meloukhia and Dr. Ovbiagele. Dunnam's counsel argues that, after filing the complaint, he diligently searched for the addresses of those two doctors. He attached to Dunnam's motion in opposition to the Doctors' summary-judgment motions his own affidavit and those of two assistants to attest to that fact. The case action summary reflects that a copy of the complaint and a summons were mailed to each of the three defendant doctors on April 25, 2000, after Dunnam had finally supplied the circuit clerk with addresses for them. Dr. Marco was served on May 3, 2000, and Dr. Meloukhia was served on May 25, 2000. Dr. Ovbiagele was not located at the address provided, but counsel appearing on his behalf filed his motion for summary judgment on July 14, 2000. The record also contains the testimony of Chuck Lewis, the circuit court's trial-settings clerk, who accepted the complaint from Dunnam's counsel on Sunday, January 2, 2000. He testified, in pertinent part:
"At the time of the filing[, Dunnam's counsel] indicated to me that there were two of the defendants that he named that he did not know their whereabouts, but you know he would later give us that information for service on those defendants."
Thus, as to Dr. Meloukhia and Dr. Ovbiagele, while they correctly state that the dispositive issue is Dunnam's intent to have them served, under the circumstances of this case we cannot conclude that, as a matter of law, at the time of filing Dunnam lacked that requisite intent. There is a genuine issue of material fact concerning Dunnam's intent to effect service of process on Dr. Meloukhia and Dr. Ovbiagele, and the resolution of the limitations issue as to them is not appropriate on a summary-judgment motion. Hobson, supra.
However, when the complaint was filed on January 2, 2000, Dunnam had an address at which Dr. Marco could be served, and Dr. Marco was in fact served at that address on May 5, 2000. We are provided with no explanation, beyond an *239 explanation of misunderstanding and oversight on the part of one of the assistants, as to why Dunnam did not attempt to effect service at that address on January 2, 2000. We conclude that Dunnam's failure in this regard, viewed objectively, evidences a lack of the required bona fide intent to have Dr. Marco immediately served.
"We can affirm a judgment on a basis not asserted to the trial court, and we can affirm a judgment if we disagree with the reasoning of the trial court in entering the judgment, as long as the judgment itself is proper. Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala.1988)."
Progressive Specialty Ins. Co. v. Hammonds, 551 So.2d 333, 337 (Ala.1989).
For the foregoing reasons, we affirm the summary judgment as to Dr. Marco, but reverse it as to Dr. Meloukhia and Dr. Ovbiagele, and we remand this case for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
SEE, J., concurs specially.
MOORE, C.J., concurs in the result.
SEE, Justice (concurring specially).
For the reasons I stated in Ex parte Mobile County Department of Human Resources, 815 So.2d 527, 532 (Ala.2001) (See, J., concurring specially), I concur.