This is a negligent inspection case. The defendants, Commercial Union Insurance Company (hereinafter "Commercial Union"), CNA Insurance Company (hereinafter "CNA"), and Fireman's Fund Insurance Company (hereinafter "Fireman's Fund"), liability and workers' compensation insurance carriers for Sepco Corporation (hereinafter "Sepco"), petitioned, pursuant to Rule 5, Ala.R.App.P., for permission to appeal from the denial of their motion for a summary judgment against the plaintiffs, Alton Lee DeShazo; Darrell Kim DeShazo; Frances Kay DeShazo; and Richard Clark Bishop, the administrator of the estate of Margaret Virginia DeShazo, deceased, all of whom previously worked for an independent contractor at Sepco's facility. We granted permission to appeal.
From 1975 to 1984, the plaintiffs were employed by an independent contractor who provided janitorial services for Sepco. The plaintiffs primarily cleaned office areas, but they also cleaned bathrooms, a break room, and offices located in one of Sepco's large production rooms where asbestos products were manufactured. They claim that while working in Sepco's facilities they were exposed to fibrous asbestos dust, which, they say, subsequently caused asbestosis and other illnesses.
During the time the plaintiffs were providing cleaning services at the Sepco facility, Commercial Union, CNA, and Fireman's Fund issued various insurance policies to Sepco.[1] All of those policies *Page 768 
contained "inspection and audit" clauses, which stated that any inspections conducted by the insurer would not be for the benefit of the insured or anyone else and would not constitute an undertaking to ensure that the inspected facilities were safe.[2] Commercial Union, CNA, and Fireman's Fund all conducted inspections of the Sepco facilities before or while their respective policies were in effect.
The plaintiffs sued Commercial Union, CNA, and Fireman's Fund, alleging that the insurers failed to detect unsafe working conditions during their inspections of the Sepco facilities. Commercial Union, CNA, and Fireman's Fund moved for a summary judgment, arguing, among other things, that the plaintiffs could not recover under a negligent or wanton inspection theory because, they say, Commercial Union, CNA, and Fireman's Fund did not undertake a duty to inspect for the benefit of the plaintiffs. The trial court denied the motion.
In reviewing a motion for a summary judgment, we apply the same standards used by the trial court. Ex parte Lumpkin,702 So.2d 462, 465 (Ala. 1997). When a movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to produce substantial evidence creating such an issue. Bassv. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). "Substantial evidence" is evidence "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989); see also Ala. Code 1975, § 12-21-12. Moreover, "[o]ur review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." Dunnam v. Ovbiagele, 814 So.2d 232, 236 (Ala. 2001).
This Court has previously examined claims of negligent inspection on the part of insurers in cases involving workers' compensation policies. In fact, we first recognized a common-law claim of negligent inspection in such a case. See Beasley v. MacDonald Eng'g Co., 287 Ala. 189,249 So.2d 844 (1971). In Beasley, the plaintiff alleged that his employer's workers' compensation carrier undertook to *Page 769 
inspect the employer's facilities in order to determine, to improve, and to promote the safety of the facilities, as well as to provide safety engineering services. Id. at 846. The plaintiff claimed that the defendant was negligent in its inspection and that it thus failed to detect a defective condition that later led to an explosion, injuring the plaintiff. Id. In Beasley, we observed that liability can arise from the negligent performance of a voluntary undertaking. Id. at 193. This doctrine is found in Restatement (Second) of Torts § 324A (1965), which states:
 "`Liability to third person for negligent performance of undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 "`(a) his failure to exercise reasonable care increases the risk of such harm, or
 "`(b) he has undertaken to perform a duty owed by the other to the third person, or
 "`(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.'"
Beasley, 287 Ala. at 193, 249 So.2d at 847. The defendant in Beasley
undertook "to inspect the premises for safety and to provide safety inspections. Having done so, under the common law expressed in our cases, [the defendant] was under a duty to use care in the performance of this undertaking." Id.
In Armstrong v. Aetna Insurance Co., 448 So.2d 353 (Ala. 1983), this Court further elaborated on the tort of negligent inspection. In that case, an independent contractor was injured while performing services on an employer's premises. The independent contractor sued the employer's workers' compensation insurer, alleging that the insurer had been negligent in its inspection of the premises. We stated:
 "This case raises the novel question in Alabama whether a workmen's compensation carrier can be held liable on a negligent inspection theory for injuries incurred by an employee of an independent contractor who was not covered by the policy of workmen's compensation insurance issued by the defendant. The tort of negligent inspection is based on the theory that when an insurer undertakes the performance of the duty owed by the insured to a third party, the insurer may be liable to that third-party if the third-party was injured as the proximate result of the insurer's failure to exercise reasonable care in said performance. Restatement (Second) of Torts § 324A [(1965)]. Thus, when an insurer undertakes to inspect an insured employer's premises for safety, it assumes the duty of the insured employer to provide a safe place for its employees to work. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971).
 "Under Alabama law, the premises owner is also under a duty to employees of an independent contractor to maintain the premises in a reasonably safe condition, except with respect to conditions arising in the progress of the work on the contract. Pate v. United States Steel Corp., 393 So.2d 992, 994 (Ala. 1981); Green v. Reynolds Metals Co., 328 F.2d 372, 374 (5th Cir. 1964). In making a safety inspection, does a workmen's compensation carrier assume the insured employer's duty as a premises owner to employees of independent contractors?
 "When a workmen's compensation carrier inspects its insured's work place, it does so to promote its interest in underwriting, rating, and loss prevention *Page 770 
with respect to the policy of insurance. The duty of care to third persons which it assumes, therefore, must be limited. While an action for negligent inspection sounds in tort and is, therefore, not based on the contract of insurance per se, the class of persons who are the intended beneficiaries of the inspection is limited to those covered by the policy. Since the duty in question is one which is gratuitously assumed by the insurer, we opine that the scope of the duty should be concomitant with the class of persons covered by the policy."
Armstrong, 448 So.2d at 355. This Court held that any duty assumed by a workers' compensation carrier when making an inspection is limited by the policy and does not include a duty to employees of an independent contractor. Id.[3]
In this case, the plaintiffs allege that Commercial Union, CNA, and Fireman's Fund, by undertaking inspections pursuant to their general liability policies, assumed the duty to provide the plaintiffs with a reasonably safe workplace. We disagree.
As Armstrong explains, the underlying theory of the tort of negligent inspection rests on the notion that the inspecting party assumes the duty of the insured to provide a safe place to work. See id. at 355 ("when an insurer undertakes to inspect an insured employer's premises for safety, it assumes the duty of the insured employer to provide a safe place for its employees to work"); see also Beasley, 287 Ala. at 194,249 So.2d at 847. In this case, however, the "inspection and audit" clauses in the policies issued by Commercial Union, CNA, and Fireman's Fund all stated that they were not undertaking "to determine or warrant that such property or operations [or workplaces, operations, machinery or equipment] are safe or healthful." Thus Commercial Union, CNA, and Fireman's Fund specifically stated that they were not, by inspecting the premises, assuming Sepco's duty to provide a safe place to work.
Furthermore, the "inspection and audit" clauses also indicate that any inspection was solely for the benefit of the defendants, and not, as described in the clauses, made "on behalf of or for the benefit of the named insured or others." (Emphasis added.) See Ranger Ins. Co. v.Hartford Steam Boiler Inspection Ins. Co., 410 So.2d 40, 42 (Ala. 1982) (noting that an "inspection and audit" clause demonstrates that "the inspection by [the insurer] was never intended to be an undertaking for the benefit of the insured"). Thus, the defendants were not voluntarily undertaking, "gratuitously or for consideration, to render services to another," as described by the Restatement (Second) of Torts. See Pugh v. Butler Tel. Co., 512 So.2d 1317, 1320 (Ala. 1987) (holding that inspections made for the sole benefit of a telephone company to ensure compliance with plans and specifications did not create a duty of care to the employees of a construction company); see also Jansen v.Fidelity Cas. Co., 79 N.Y.2d 867, 868-69, 589 N.E.2d 379, 380,581 N.Y.S.2d 156, 157 (1992) ("While it is true that one who assumes to act, even though not obligated to do so, may thereby become subject to the duty to act carefully . . . . The application of this principle has been limited to `those situations wherein the action taken is for the benefit of another and not in furtherance of the interest of the one who assumes to act.'" (citations omitted) *Page 771 
(quoting James v. State, 90 A.D.2d 342, 344, 457 N.Y.S.2d 148, 151
(1982))).[4]
While we have, in the past, described this situation as fitting an "exception" to the common-law principles embodied in Restatement (Second)of Torts § 324A (1965), see Rudolph v. First S. Fed. Sav. LoanAss'n, 414 So.2d 64, 68 (Ala. 1982) (stating that an "inspection and audit" clause brought the defendant in Ranger Insurance within a recognized exception to the common-law "voluntary undertaking" doctrine because the policy provision leaves no doubt the inspections are for the sole benefit of the insurer), we note that it is not based upon an "exception" to § 324A that we decide this case. Rather, it is the fact that, in this situation, § 324A, as a conduit of liability, is rendered wholly unavailable to the plaintiffs because there was no "undertaking . . . to render services for another." See Rudolph, 414 So.2d at 68 n. 2 (stating that "[w]hile Ranger Insurance uses the term `exception to the rule' . . ., we recognize that, in the purest sense, its holding of no liability is not an `exception'; rather, the RangerInsurance facts . . . do not invoke the operative effect of the `gratuitous undertaking' doctrine."). Because the inspections were not made for the benefit of anyone other than the defendants, the defendants owed no duty of care to the plaintiffs.
The plaintiffs argue that because they were not a party to the insurance contracts between Sepco and the defendants, the "inspection and audit" clauses cannot preclude their claims. The plaintiffs, however, misunderstand the effect of the clauses. Just as the insurance contract may limit the persons to whom a duty of care is assumed by an inspection, see Armstrong, 448 So.2d at 355, the contract may limit the scope of any duty assumed by the insurers when an inspection is made pursuant to the contract. The "inspection and audit" clauses in this case clearly demonstrate that the defendants were not assuming Sepco's duty to keep the workplace safe for the plaintiffs.[5]
Because Commercial Union, CNA, and Fireman's Fund undertook to inspect Sepco's facilities for their own benefit and did not assume the duty to provide a safe place to work, they cannot be held liable for negligent inspection. Therefore, the *Page 772 
defendants are entitled to the summary judgment. The trial court's order denying Commercial Union's, CNA's, and Fireman's Fund's motions for a summary judgment is reversed and a judgment is rendered for Commercial Union, CNA, and Fireman's Fund.
REVERSED AND JUDGMENT RENDERED.
Moore, C.J., and See, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Lyons, J., concurs in the result.
Johnstone, J., concurs in part and dissents in part.
[1] Commercial Union issued general liability policies which were in effect from 1970 through 1978 and 1981 through 1982, as well as two workers' compensation policies which provided coverage from 1971 to 1973. Fireman's Fund insured Sepco under a general liability insurance policy from 1981 until September 1982. From September 1982 to September 1984, CNA provided Sepco both workers' compensation and general liability coverage.
[2] Two variations of the inspection and audit clause appear in the policies:
 "Inspection and Audit: The Company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation."
 "Inspection and Audit: The company and any rating authority having jurisdiction by law shall each be permitted but not obligated to inspect at any reasonable time the workplaces, operations, machinery and equipment covered by this policy. Neither the right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the insured or others, to determine or warrant that such workplaces, operations, machinery or equipment are safe or healthful, or are in compliance with any law, rule or regulation."
[3] Armstrong clearly bars a claim against CNA and Commercial Union for negligent inspections performed pursuant to the workers' compensation policies. The parties seem to acknowledge this on appeal, because the issues presented for review revolve solely around liability for inspections pursuant to the general liability policies.
[4] The plaintiffs argue that Hodge v. United States Fidelity Guaranty Co., 539 So.2d 229 (Ala. 1989), rejects the notion that inspections can be made for the sole benefit of the insurer. In Hodge, the plaintiffs presented evidence indicating that their employer's workers' compensation insurer had assumed the employer's duty to provide a safe workplace. In the case at issue, however, the policies expressly state that the defendants were not undertaking a duty to ensure that the workplace was safe.
[5] Other courts have reached the same legal conclusion. In James v.State, 90 A.D.2d 342, 344, 457 N.Y.S.2d 148, 151 (1982), the court held that a similar "inspection and audit" clause disclaimed that any inspection was conducted for the benefit of the employer or others; thus, the inspection was not a gratuitous undertaking for the benefit of another. 90 A.D.2d at 345, 457 N.Y.S.2d at 150-51. Holding that the scope of the duty undertaken was strictly defined by the contract, the court stated:
 "Although the claim is based on negligence and not on the contract, the scope of the undertaking must be determined in the context of the contract and not in isolation from it since any inspection which may have occurred was conducted pursuant to the permissive clause in the contract. Viewed in this context, the undertaking was clearly not for the benefit of the employer or employee."
James, 90 A.D.2d at 345, 457 N.Y.S.2d at 152 (footnote omitted). See alsoKennard v. Liberty Mut. Ins. Co., 277 So.2d 170, 174 (La.Ct.App. 1973) (holding that an "inspection and audit clause" negates any duty created by an inspection on the part of an insurer to an employee of the insured).