Rel: March 17, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

## 1210384 and 1210392
_____

**Carlos Fernando Reixach Murey, as administrator of the Estate of Carlos Lens Fernandez, deceased**

**v.**

**City of Chickasaw, Michael E. Reynolds, Cynthia Robinson Burt, Arellia Taylor, and George Taylor**

**Appeals from Mobile Circuit Court**
**(CV-18-901354 and CV-19-903361)**

STEWART, Justice.

Carlos Fernando Reixach Murey, as administrator of the estate of Carlos Lens Fernandez, deceased, appeals from a summary judgment entered in two separate actions by the Mobile Circuit Court ("the trial court") in favor of the City of Chickasaw, Michael E. Reynolds, Cynthia Robinson Burt, Arellia Taylor, and George Taylor ("the defendants"). For the reasons discussed herein, we dismiss appeal no. 1210384 and affirm the judgment in appeal no. 1210392.

## Facts and Procedural History

According to the allegations in the complaints and the evidence submitted in support of, and in opposition to, the summary-judgment motions, on May 27, 2016, at approximately 2:00 a.m., Sgt. George Taylor ("Sgt. Taylor"), a police officer employed by the Chickasaw Police Department, discovered an automobile on the shoulder of the on-ramp to an interstate highway. Carlos Lens Fernandez ("Lens") was passed out inside the automobile, and the automobile's engine was running. After he failed to complete various field sobriety tests, Lens acknowledged that he was intoxicated. Sgt. Taylor arrested Lens for driving under the influence and, with assistance from Officer Gregory Musgrove, transported Lens to the Chickasaw City Jail ("the jail").

2

At the jail, Sgt. Taylor attempted to conduct a breath test to determine Lens's blood-alcohol level, but Lens repeatedly fell asleep or lost consciousness. Sgt. Taylor then called Sgt. Phillip Burson into the room to assist. Sgt. Taylor and Sgt. Burson were able to conduct a breath test on Lens, and the results of the test showed Lens's blood-alcohol level was .12%. At approximately 3:11 a.m., Sgt. Taylor and Sgt. Burson took Lens to a jail cell and placed him on his back on a cot. Lens did not advise Sgt. Taylor or any other person that he had any medical issues or that he needed medical attention. According to both Sgt. Taylor and Sgt. Burson, Lens appeared to be intoxicated, and nothing about their encounter with Lens indicated to them that Lens needed medical attention.

Arellia Taylor ("Jailer Taylor") was the jailer/dispatcher on duty at the time Lens was booked into the jail. Jailer Taylor wrote the following concerning Lens on a jail log: "Need photo, medical questions & changing out, & printing" and "Draeger .12, Unable or too intoxicated to stay up and use phone, answer questions, get finger printed or change clothes upon arrest." At approximately 6:00 a.m., Cynthia Robinson Burt ("Jailer Burt") took over as the jailer/dispatcher. Because of Lens's condition and

apparent inability to answer questions, neither Jailer Taylor nor Jailer Burt fully completed a medical-screening form pertaining to Lens.

Jailer Burt checked on Lens when she first began her shift, and she subsequently monitored Lens through a video-monitoring system. At 8:38 a.m., Jailer Burt checked on Lens, but he did not respond to Jailer Burt's oral commands. Jailer Burt summoned Officer Robert Wenzinger and asked him to check on Lens. Officer Wenzinger stated that, when he checked Lens, he could not find a pulse and noticed that Lens was cool to the touch on his arm and neck. Jailer Burt notified her supervisor of the situation and dispatched emergency medical services. At 8:50 a.m., personnel with the Chickasaw Fire Department arrived at the jail and began attempts to resuscitate Lens. Lens was pronounced dead at 9:14 a.m. Lens's autopsy report listed the cause of death as "hypertensive and atherosclerotic cardiovascular disease."

On May 26, 2018, pursuant to § 6-5-410, Ala. Code 1975, Murey commenced a wrongful-death action ("the first action") against the City of Chickasaw ("the City"); Michael E. Reynolds, the public-safety director for the City; Jailer Burt; and numerous fictitiously named defendants; the first action was assigned case no. CV-18-901354. Murey also asserted

4

various federal claims in the complaint. On June 15, 2018, the named defendants in the first action filed a joint notice of removal to the United States District Court for the Southern District of Alabama ("the federal district court").

While the first action was pending in the federal district court, Murey filed an amended complaint in which he, among other things, intentionally omitted the fictitiously named defendants because the federal district court had previously indicated that it would strike those defendants. See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court."). The named defendants in the first action moved for a summary judgment. On November 26, 2019, the federal district court entered a summary judgment in favor of those defendants on the federal claims and dismissed Murey's state-law wrongful-death claim, over which it had exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), without prejudice.

On December 24, 2019, in accordance with 28 U.S.C. § 1367(d), Murey commenced a second wrongful-death action in the trial court ("the

second action"); that action was assigned case no. CV-19-903361. Section 1367(d) provides:

> "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

In addition to the defendants he had named in the first action, Murey also named Jailer Taylor and Sgt. Taylor, a married couple, as defendants. On December 25, 2019, Murey filed in the trial court a motion to reinstate the first action and to consolidate the second action with the first action; the trial court granted that motion. Murey also purported to substitute the Taylors for fictitiously named defendants that had been designated in the original complaint in the first action.

On January 29, 2020, the defendants filed an answer in the second action in which they asserted various affirmative defenses. On July 9, 2020, the Taylors filed in the second action a motion to dismiss, asserting that the claims against them were barred by § 6-5-410(d), Ala. Code 1975, which requires wrongful-death actions to be commenced within two years of the decedent's death, and that neither the complaint in the second

6

action naming them as defendants nor Murey's purported substitution of them for fictitiously named defendants designated in the original complaint in the first action related back to the filing of the original complaint in the first action. Murey filed a response in which he asserted that he had properly substituted the Taylors for fictitiously named defendants under Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P., and that the claims against them related back to the filing of the original complaint in the first action. On January 15, 2021, the trial court entered an order denying the Taylors' motion to dismiss filed in the second action.[1]

On August 2, 2021, Murey filed a "first amended complaint" in both the first action and the second action, and the defendants filed a joint answer in both actions. Thereafter, the defendants moved for a summary judgment. The defendants asserted that Murey's claims against the individual defendants were barred by State-agent immunity and that the

---

[1]The Taylors filed a motion to reconsider, which the trial court denied. Thereafter, the Taylors petitioned this Court for a writ of mandamus, seeking the dismissal of the second action against them. This Court denied the petition by an unpublished order. Ex parte Taylor (No. 1200341, Mar. 17, 2021).

City was not vicariously liable. The defendants also argued that Murey had failed to show that any act of the defendants had caused Lens's death. The defendants later filed an additional summary-judgment motion in which they argued that Murey's claims against the Taylors were barred under § 6-5-410(d) because those claims had not been asserted within two years of Lens's death. The defendants supported their motions with, among other evidence, deposition and affidavit testimony from the defendants, Murey's expert witnesses, and other witnesses; copies of the jail's operations policy and prisoner-transport policy; the autopsy and toxicology report related to Lens; the jail log related to Lens's booking; and the written description of the City's jailer/dispatcher job duties.

Murey filed a response in opposition the defendants' summary-judgment motions to which he attached, among other evidence, deposition testimony from his expert witnesses: Dr. Thomas Shull (a jail-administration expert), Dr. Anthony Maggio (an emergency-medicine expert), Dr. Michael Marlin (an emergency-medicine and medical-toxicology expert), and Ahna Stolfi (a paramedic). Murey also submitted a State Bureau of Investigation report, other deposition and affidavit

testimony, the defendants' responses to interrogatories, Reynolds's employment contract with the City, and a prehospital-care summary completed by Stolfi. The substance of Murey's arguments and experts' opinions was that the defendants had negligently prevented Lens from receiving a medical evaluation from trained medical personnel and that, if Lens had been provided medical attention, he would have survived because he would have been in a hospital where he could have received close monitoring and rapid intervention.

On January 28, 2022, the trial court entered a summary judgment in both actions in favor of all the defendants. Murey timely filed a notice of appeal each action. This Court consolidated the appeals.

Discussion

I. Appeal No. 1210384

Appeal no. 1210384 is an appeal from the judgment entered in the first action. At the outset, we must determine whether this Court has jurisdiction to consider this appeal because the "'[l]ack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero

9

motu.'" <u>MPQ, Inc. v. Birmingham Realty Co.</u>, 78 So. 3d 391, 393 (Ala. 2011) (quoting <u>Ex parte Smith</u>, 438 So. 2d 766, 768 (Ala. 1983)).

As mentioned earlier, the first action was removed to the federal district court shortly after its commencement. After the federal district court entered a summary judgment on the federal claims and elected not to continue to exercise its supplemental jurisdiction over the state-law wrongful-death claims, it dismissed the state-law claims without prejudice. See 28 U.S.C. § 1367(d). The federal district court did not remand the first action to the trial court.

Pursuant to the federal removal statute, 28 U.S.C. § 1446, after a defendant has effectuated the removal of an action, "the State court shall proceed no further <u>unless and until the case is remanded</u>." 28 U.S.C. § 1446(d) (emphasis added). This Court has previously interpreted 28 U.S.C. § 1446(d) as requiring an order of remand before a state trial court may proceed with an action that has been removed. See <u>Weinrib v. Duncan</u>, 962 So. 2d 167, 169 (Ala. 2007) (explaining that, after removal is effectuated, a "state trial court [is] divested of jurisdiction over the underlying case and [cannot], <u>in the absence of an order of remand</u>, take any further action regarding the case. The federal removal statute is

explicit on this point." (emphasis added)); King v. Landrum, 370 So. 2d 945, 947 (Ala. 1979) (relying on Doerr v. Warner, 247 Minn. 98, 106, 76 N.W.2d 505, 512 (1956), and holding that a removed "action resumed its position as though no removal had ever been attempted upon remand to state court" (emphasis added)); and Ex parte Metropolitan Life Ins. Co., 707 So. 2d 229, 232 (Ala. 1997) (adopting the holding in King and recognizing that "actions taken in a state court immediately become effective again upon remand and have the same effect as if no removal had taken place" (emphasis added)).

Regardless of whether the state court's jurisdiction is considered to be "stayed" or "divested" during removal, it is clear that the federal court's entry of an order remanding the case to the state court is required before the state court can resume substantive action in the case. Any action taken without a remand order is void for a lack of jurisdiction. This holding is in keeping with decisions of other courts. See, e.g., Quixtar, Inc. v. Campbell, 298 Ga. App. 617, 617-18, 680 S.E.2d 661, 662 (2009) ("'[W]hen an action in a State court is removed to a Federal district court, the jurisdiction of the State court is suspended until the case is remanded to the State court, at which time the case resumes the status it occupied

at the time of the removal.'" (citation omitted)); <u>Musa v. Wells Fargo Delaware Tr. Co.</u>, 181 So. 3d 1275, 1276 (Fla. Dist. Ct. App. 2015) ("A 'state court is allowed to resume jurisdiction of the removed case if, and only if, the federal court grants permission by entering an order of remand.'" (citation omitted)); <u>Lynn v. Aria Health Sys.</u>, 227 A.3d 22, 31 (Pa. Super. Ct. 2020) (adopting the reasoning from <u>Fessler v. Hannagan</u>, 144 Pa. Cmwlth. 274, 278, 601 A.2d 462, 464 (1991), and holding that a trial court lacked subject-matter jurisdiction over a plaintiff's attempt to "reinstate" a previously removed action that had been dismissed, rather than remanded, by the federal court); <u>Fessler v. Hannagan</u>, 144 Pa. Cmwlth. at 278, 601 A.2d at 464 ("There is no suggestion in [28 U.S.C. § 1446] that dismissal of the action in federal court somehow operates as an automatic remand to the state court …."); <u>Miller v. Equifax, Inc.</u>, 228 Or. App. 324, 208 P.3d 498 (2009) (holding that a state trial court was without jurisdiction to consider an amended complaint filed in a previously removed action when the federal court had dismissed, instead of remanded, the action and that, in that scenario, the plaintiff was required to refile the action as a new case); <u>Willis v. Shelby Cnty.</u> (No. W2008-01487-COA-R3-CV, June 8, 2009) (Tenn. Ct. App. 2009)

(unpublished opinion) (rejecting plaintiffs' argument that federal court's dismissal of a removed action operated as an automatic remand to the state court and explaining "that a state court has no jurisdiction to resume proceedings where a federal court, in its discretion, dismisses the case rather than remanding it"); Allstate Ins. Co. v. Superior Court of County of Santa Clara, 132 Cal. App. 3d 670,  183 Cal. Rptr. 330 (1982) (holding that a state trial court had no power to resume proceedings via an amended complaint purportedly filed in previously removed action when federal court had dismissed, instead of remanded, the action); and Allstate Ins. Co. v. Preston, 842 F.Supp. 1441, 1443 (S.D. Fla. 1992) (holding that, because a previously removed case had never been remanded, the state trial court lacked jurisdiction to proceed in the action).

Accordingly, because the federal district court dismissed, rather than remanded, the state-law wrongful-death claims in the first action, the trial court was without jurisdiction to consider Murey's motion to reinstate the first action and any other subsequent pleadings or motions purportedly filed in that action. Therefore, any action taken by the trial court after the removal of the first action -- including the entry of a

13

summary judgment -- is void. "'A judgment entered by a court lacking subject-matter jurisdiction is absolutely void and will not support an appeal; an appellate court must dismiss an attempted appeal from such a void judgment.'" MPQ, 78 So. 3d at 394 (quoting Vann v. Cook, 989 So. 2d 556, 559 (Ala. Civ. App. 2008)). Accordingly, we dismiss appeal no. 1210384.

## II. Appeal No. 1210392

Appeal no. 1210392 is an appeal from the judgment entered in the second action, which was commenced by Murey within 30 days of the federal district court's dismissal of the state-law wrongful-death claims in the first action. Therefore, Murey complied with 28 U.S.C. § 1367(d). See Weinrib, 962 So. 2d at 170; and Roden v. Wright, 611 So. 2d 333 (Ala. 1992). "Under 28 U.S.C. § 1367(d), the statute of limitations for state-law claims is tolled only when a party seeks to refile in the state court the same state-law claims the party asserted in the federal court." Rester v. McWane, Inc., 962 So. 2d 183, 186 (Ala. 2007). Accordingly, Murey properly invoked the trial court's jurisdiction with regard to the second action, insofar as that action asserts the same state-law claims that were

asserted in the first action before the expiration of the applicable statute of limitations.

## A. Claims Against the Taylors

Murey did not assert claims against the Taylors until he commenced the second action on December 24, 2019. Lens died on May 27, 2016, and any wrongful-death claim was required to have been asserted within two years of Lens's death. See § 6-5-410(d), Ala. Code 1975. Accordingly, Murey's claims against the Taylors are time-barred, unless the limitations period applicable to those claims was tolled. However, the tolling provision of 28 U.S.C. § 1367(d) does not apply to circumstances in which the claims asserted in a refiled action differ from those asserted in the dismissed federal-court action or in which the claims are asserted against new defendants. See Rester, 962 So. 2d at 186 (holding that § 1367(d) did not apply because the claims asserted in the federal court were different from the claims asserted in state court); Ex parte Profit Boost Mktg., Inc., 254 So. 3d 862, 872 (Ala. 2017) (explaining that § 1367(d) was inapplicable to toll the statute of limitations for a plaintiff's claims that were added against a new defendant after the action was remanded from federal court because

those claims had not been asserted at the time that the case was removed to federal court). Our construction of 28 U.S.C. § 1367(d) is in line with federal courts' construction of § 1367(d) as being inapplicable to claims asserted against new defendants. See, e.g., Cooper v. City of New York (No. 17-CV-1517 (NGG) (RLM), Aug. 5, 2019) (E.D.N.Y. 2019) (not reported in Federal Supplement); Barnett v. Connecticut Light & Power Co., 967 F. Supp. 2d 593, 599-600 (D. Conn. 2013), aff'd, 580 F. App'x 30 (2d Cir. 2014); and Brengettcy v. Horton (No. 01 C 197, May 5, 2006) (N.D. Ill. 2006) (not reported in the Federal Supplement). Moreover, the United States Supreme Court has indicated that 28 U.S.C. § 1367(d) applies only to claims previously asserted against a defendant within the applicable limitations period: "Whenever § 1367(d) applies, the defendant will have notice of the plaintiff's claims within the state-prescribed limitations period. Likewise, the plaintiff will not have slept on her rights. She will have timely asserted those rights, endeavoring to pursue them in one litigation." Artis v. District of Columbia, 583 U.S. 71, ___, 138 S. Ct. 594, 608 (2018).

Because Murey did not assert wrongful-death claims against the Taylors in the first action that was removed to federal court, but, rather,

16

first asserted those claims in the second action, which was commenced after the expiration of the two-year limitations period in § 6-5-410(d), 28 U.S.C. § 1367(d) did not apply to toll the limitations period applicable to the wrongful-death claims against the Taylors. See <u>Rester</u>, 962 So. 2d at 186; <u>Ex parte Profit Boost Mktg.</u>, 254 So. 3d at 872.

Murey also relies on relation-back principles pursuant to Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P., in arguing that his claims against the Taylors are not time-barred because, he asserts, he substituted the Taylors for fictitiously named defendants. Rule 9(h) permits a party who is ignorant of the name of a defendant to instead designate a fictitiously named defendant in its complaint and to subsequently amend the complaint to substitute the defendant by name after its identity is discovered. Rule 9(h) works in conjunction with Rule 15(c)(4), which permits an amended complaint substituting a defendant for a fictitiously named defendant to relate back to the date of the original complaint when the plaintiff was ignorant of the defendant's identity at the time of the filing of the original complaint and the plaintiff thereafter exercised due diligence in discovering the defendant's identity. See <u>Ex parte Cowgill</u>, 301 So. 3d 116, 123 (Ala. 2020).

The Taylors were specifically named as defendants in the original complaint filed in the second action; they were not substituted for fictitiously named defendants against whom claims had previously been asserted in the second action. The second action was commenced after the expiration of the applicable limitations period. The complaint filed in the second action cannot relate back to the original complaint filed in the first action. Although the second action was purportedly consolidated with the first action, consolidated actions retain their separate identities and the parties and pleadings in each action are not merged into a single action. Solomon v. Liberty Nat'l Life Ins. Co., 953 So. 2d 1211, 1222 (Ala. 2006); Ex parte Flexible Prods. Co., 915 So. 2d 34, 50 (Ala. 2005); and League v. McDonald, 355 So. 2d 695, 697 (Ala. 1978). Therefore, relation-back principles do not apply to make timely the Murey's claims against the Taylors.

Because Murey's wrongful-death claims against the Taylors are time-barred, we affirm the trial court's summary judgment in favor of the Taylors. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So. 2d 1013, 1020 (Ala. 2003) ("[T]his Court will affirm the trial court on any valid legal ground presented by the record,

regardless of whether that ground was considered, or even if it was rejected, by the trial court.").

## B. Claims Against the Remaining Defendants

We now turn to the remaining claims in Murey's appeal regarding the summary judgment entered in favor of the City, Reynolds, and Jailer Burt. Murey asserts that neither Reynolds nor Jailer Burt are shielded by State-agent immunity and, consequently, that the City is likewise not immune from suit.

A State agent may be entitled to immunity from civil liability in his or her personal capacity under certain circumstances. See § 36-1-12(c), Ala. Code 1975; see also Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000) (plurality opinion) (providing restatement of the law regarding State-agent immunity, which was adopted by a majority of the Court in Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000)).

> "We note that '[i]mmunity applies to employees of municipalities in the same manner that immunity applies to employees of the State. See Ex parte City of Birmingham, 624 So. 2d 1018 (Ala. 1993). Ex parte Cranman, [792 So. 2d 392 (Ala. 2000),] did nothing to alter this application.' City of Birmingham v. Brown, 969 So. 2d 910, 916 (Ala. 2007)."

Ex parte Tucker, 303 So. 3d 467, 472 (Ala. 2019).

19

In discussing the application of State-agent immunity, this Court recently explained:

"In Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000), a plurality of this Court restated the law governing State-agent immunity. Although Cranman was a plurality decision, the restatement of the law governing State-agent immunity set forth in Cranman was subsequently adopted by a majority of this Court in Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000). In 2006, this Court, in Hollis v. City of Brighton, 950 So. 2d 300, 309 (Ala. 2006), modified category (4) of the Cranman restatement. Accordingly, the full Cranman restatement of the law governing State-agent immunity, as modified by Hollis, supra, is as follows:

"'A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

"'(1) formulating plans, policies, or designs; or

"'(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

"'(a) making administrative adjudications;

"'(b) allocating resources;

"'(c) negotiating contracts;

"'(d) hiring, firing, transferring, assigning, or supervising personnel; or

20

"'(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

"'(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons[, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975]; or

"'(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

"'Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

"'(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

"'(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority,

21

> or under a mistaken interpretation of the law.'

"792 So. 2d at 405 (bracketed modification added by Hollis, 950 So. 2d at 309)."

Burton v. Hawkins, [Ms. 1200825, Mar. 11, 2022] ___ So. 3d ___, ___ (Ala. 2022); see also § 36-1-12(c) and (d). A State agent bears the initial burden of demonstrating that the State agent was engaged in conduct that would entitle him or her to immunity. Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006). After the State agent successfully demonstrates that he or she was engaged in conduct that would entitle the State agent to immunity, the burden then shifts to the plaintiff to demonstrate by substantial evidence the applicability of one of the two exceptions to immunity. See § 36-1-12(d)(1) and (2); Ex parte Pinkard, [Ms. 1200658, May 27, 2022] ___ So. 3d ___, ___ (Ala. 2022).

### 1. Reynolds

Murey concedes that Reynolds, as the City's public-safety director, demonstrated that he was engaged in a function that would entitle him to State-agent immunity. Murey argues, however, that Reynolds lost that entitlement to immunity by acting beyond his authority. Murey's sole contention in support of his assertion that Reynolds acted beyond his

22

authority is that Reynolds failed to provide any medical training to Sgt. Taylor, Sgt. Burson, Jailer Taylor, and Jailer Burt, which, he asserts, was required by Reynolds's employment contract with the City.

In opposition to the defendants' summary-judgment motions, Murey presented a copy of an employment contract between Reynolds and the City that required Reynolds to, among other things, "direct[] and develop[] a training program including general law enforcement, firearms, fire service, fire prevention, fire suppression and other employee development training programs ...." Citing Howard v. City of Atmore, 887 So. 2d 201, 210 (Ala. 2003), Murey asserts that, although Reynolds had the discretion to determine the amount and the timing of training provided, he could not abandon the duty to provide training altogether. As the defendants point out, however, although the contract imposed a duty on Reynolds to direct and develop certain training programs, none of those programs involved medical training. Murey has not pointed to any evidence indicating that Reynolds was required to provide medical training for any City employee in support of his contention that Reynolds acted beyond his authority. Therefore, Murey did not meet his burden of presenting "substantial evidence"

23

demonstrating that Reynolds had acted beyond his authority or that Reynolds's actions otherwise fell within one of the exceptions to State-agent immunity. Ex parte Pinkard, ___ So. 3d at ___. Accordingly, Murey has not demonstrated that the trial court erred in entering a summary judgment in favor of Reynolds.

## 2. Jailer Burt

Murey first argues that Jailer Burt did not meet her burden of demonstrating that she was engaged in a function that would entitle her to State-agent immunity. Conversely, the defendants, relying on Ex parte Price, 256 So. 3d 1184 (Ala. 2018), argue that Jailer Burt's position as a jailer/dispatcher required her to exercise discretion in carrying out departmental policies and that, therefore, she was engaged in a function that would have entitled her to State-agent immunity.

In Ex parte Price, this Court discussed the distinction recognized in Cranman "'between conduct involved in planning or decision-making in the administration of government and the conduct of those required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done.' 792 So. 2d at 402." 256 So. 3d at 1189. This Court held, among

other things, that the prison warden in that case, who was tasked with broad responsibility for the safety and security of the prison and its officers and inmates, was engaged in conduct that placed her within category (2) of the Cranman restatement. Id. at 1190. This Court relied, in part, on Howard v. City of Atmore, 887 So. 2d 201, 209-10 (Ala. 2003), in which this Court had recognized that the chief of police in that case was "responsible for the 'day-to-day operations of the … city jail'" and that "[t]hose activities fall squarely within category (2) of the Cranman formula." Murey argues that Ex parte Price is distinguishable because, he says, Jailer Burt was not involved in planning or decision-making and, unlike the warden in Ex parte Price, was simply carrying out orders with little discretion as a "lower member" of the City's "hierarchy."

Although Jailer Burt was not the warden, or a police chief, and although Jailer Burt was not engaged in a function that is explicitly outlined under category (2) of the Cranman restatement, this Court has previously explained: "'[T]he situations listed in subparagraphs (2)(a)-(d) of the Cranman immunity rule are expressly only "examples" of the

25

general principle stated in paragraph (2) itself.' Ryan v. Hayes, 831 So. 2d 21, 31 (Ala. 2002)." Howard, 887 So. 2d at 210.[2]

The defendants presented evidence demonstrating that Jailer Burt was employed as a jailer/dispatcher for the City and that only one jailer/dispatcher is on duty at a time. Jailer Burt, as the sole jailer/dispatcher on duty, was responsible for, among other tasks, the care and supervision of inmates. Jailer Burt's usual duties included booking, monitoring, feeding, releasing, and providing medical care to inmates, if necessary. Jailer Burt was also tasked with performing her duties as a dispatcher, which included receiving calls regarding emergency services, dispatching officers, completing department paperwork, and pulling warrants. Reynolds's testimony indicated that jailers were expected to follow the jail's operations policy as a guideline but that jailers had to multitask and exercise discretion in handling their various job duties.

---

[2]Additionally, we note that, if Jailer Burt had been releasing Lens from custody, which is one of her job duties as a jailer, she would have been performing a function that explicitly entitled her to State-agent immunity. See § 36-1-12(c)(5), Ala. Code 1975 (recognizing immunity when the State agent is "[e]xercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners").

26

The evidence submitted indicates that Jailer Burt was tasked with exercising her discretion in conducting the operations of the jail and in supervising inmates in custody, which, in turn, constitutes administering the policies and procedures of the City. Accordingly, Jailer Burt presented evidence demonstrating that Murey's claim against her -- which was based on how she handled Lens's supervision and care while in custody -- arose from Burt's performance of a job function that would entitle her to State-agent immunity.[3] See, e.g., Shell v. Butcher, 339 So. 3d 226, 231 (Ala. 2021) ("It is undisputed that [the municipal jailers] were discharging duties pursuant to Montgomery municipal-jail policies and procedures and, therefore, generally would be entitled to State-agent immunity."). Accordingly, the burden then shifted to Murey to present substantial evidence demonstrating the applicability of one of the two exceptions to State-agent immunity. Id.

---

[3]Although this Court has held that "a municipal jailer who lacks the authority of a police officer cannot claim immunity under concepts applicable to the immunity of a State agent under § 6-5-338(a)," Walker v. City of Huntsville, 62 So. 3d 474, 501 (Ala. 2010), this Court has also recognized that a municipal jailer may nevertheless qualify for State-agent immunity under another applicable Cranman category of immunity. Shell v. Butcher, 339 So. 3d 226, 231 (Ala. 2021).

Murey argues that, even if Jailer Burt was entitled to State-agent immunity under one of the categories of the Cranman restatement, she would be stripped of that immunity because she acted beyond her authority by failing to follow the jail's rules and policies.

> "One of the ways in which a plaintiff can demonstrate that a State agent acted beyond his or her authority is by offering evidence that the State agent failed '"to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist."' Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003) (quoting Ex parte Butts, 775 So. 2d [173,] 178 [(Ala. 2000)])."

Shell, 339 So. 3d at 231. Although Murey vaguely describes actions that he asserts were beyond Jailer Burt's authority, he neither delineates the particular policies and procedures that he asserts Jailer Burt violated nor explains how those alleged policies and procedures come within the scope of this Court's holding in Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003).

Murey asserts that Jailer Burt acted beyond her authority when she failed to complete a medical-screening form pertaining to Lens. That form was partially completed by Jailer Taylor, but she was unable to finish the portions of the form that required direct responses from Lens. Jailer Burt testified that she had "planned to complete the medical

28

questionnaire, [and] take [Lens's] photo and fingerprints[,] after serving breakfast that morning" and that "[t]here was no standard procedure that required those tasks to be completed by a specific time. In similar situations in the past, those tasks were completed once the arrestee is able." Murey does not identify any policy that requires the completion of a medical-screening form within a certain time or by a certain individual or otherwise explain how Jailer Burt's failure to obtain Lens's answers to complete the form violates a detailed rule or regulation. See Giambrone, 874 So. 2d at 1052.

Murey also asserts that Jailer Burt acted beyond her authority when she failed to contact emergency medical services after reading the information regarding the severity of Lens's intoxication on the jail log and because, he asserts, she failed to check on Lens every 30 minutes. The jail log is a preprinted form, and it states under "SPECIAL NOTES" to "1. CHECK INMATE EVERY 30 MINUTES." As noted above, Jailer Taylor handwrote on the jail log: "Need photo, medical questions & changing out, & printing." Jailer Taylor also wrote: "Draeger .12, Unable or too intoxicated to stay up and use phone, answer questions, get finger printed or change clothes upon arrest." The evidence indicated that,

29

when Jailer Burt began her shift at around 6:00 a.m., Lens was sleeping in his cell, and there was no evidence to suggest that, at that time, Lens was in need of medical attention. Moreover, Reynolds indicated in deposition testimony that determining whether an inmate needed medical treatment would be the job of the arresting officer and the booking jailer, neither of which were Jailer Burt.

With regard to Jailer Burt's alleged failure to check on Lens, Jailer Burt testified that she was trained to check on the inmates every hour but that she checked on them as frequently as possible by physically viewing them from outside their cells and through the video-monitoring system. Jailer Burt testified that she had checked on Lens every 5 to 10 minutes on the video-monitoring system.[4] Each time that Jailer Burt checked on Lens, it appeared to her that he was sleeping. Murey has not presented evidence demonstrating that Jailer Burt failed to check on Lens or that 30-minute "special note" in the jail log was a detailed rule or regulation that Jailer Burt failed to comply with.

---

[4]Murey asserts that Jailer Burt could not see Lens on the video-monitoring system with the lights off, but all the evidence he points to in support of that assertion is from Jailer Taylor and his jail-administration expert, and that evidence does not indicate that Jailer Burt could not see Lens when she checked on Lens through the video-monitoring system.

Murey also appears to assert that Burt's actions violated the jail's operations policy, which outlines procedures for, among other things, booking, housing, and releasing inmates. That policy contains the following section pertinent to this appeal:

"J. NECESSARY PAPERWORK

"1. JAIL SHEET

"2. INTERVIEW SHEET: After interview, both the Docket Personnel and Patrol Supervisor will review it and sign it. ..."

Reynolds's testimony indicated that jailers are expected to follow the jail's operations policy, but that jailers have to multitask and exercise discretion in handling their various job duties. Like the jail log, the jail's operations policy does not explicitly outline whether the booking jailer or a subsequent jailer is responsible for completing the "necessary paperwork," nor does it provide a deadline or timeline as to when the paperwork must be completed. Murey acknowledges that there is no specific time frame in which to complete the paperwork, but, he argues, the paperwork was never completed. However, the lack of particularity in the jail's operations policy and jail log demonstrates that those are not the type of detailed rules or regulations envisioned in Giambrone. See

<u>Shell</u>, 339 So. 3d at 232 (holding that jail's policies that were "broadly phrased" and ambiguous and did "not indicate which correctional officer is tasked with the duty stated in the provision" were not akin to a detailed checklist under <u>Giambrone</u>). Accordingly, based on the materials submitted in opposition to the summary-judgment motions, Murey has not demonstrated by substantial evidence that Jailer Burt acted beyond her authority or that the trial court erroneously entered a summary judgment in Jailer Burt's favor.

### 3. The City

The City's liability hinges on the liability of its employees. See § 11-47-190, Ala. Code 1975 (providing that a municipality may be liable for damages for an injury caused by "the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty"). "[I]f a state actor is immune from liability for a particular act or omission, the state or municipality is also immune from liability for the same act or omission." <u>City of Crossville v. Haynes</u>, 925 So. 2d 944, 954 (Ala. 2005) (citing <u>Howard v. City of Atmore</u>, 887 So. 2d 201 (Ala. 2003)). Because Murey has not established that Reynolds and Jailer Burt are not immune

from liability, he has, likewise, failed to establish the City's liability for their actions. Moreover, Murey does not present any argument regarding the City's alleged liability. See Boshell v. Keith, 418 So. 2d 89, 92 (Ala. 1982) ("When an appellant fails to argue an issue in its brief, that issue is waived."). Accordingly, the trial court's summary judgment in favor of the City is affirmed.

## Conclusion

Appeal no. 1210384 is dismissed. In appeal no. 1210392, the summary judgment entered in favor of all the defendants is affirmed.

1210384 -- APPEAL DISMISSED.

1210392 -- AFFIRMED.

Parker, C.J., and Wise, Sellers, and Cook, JJ., concur.